**JUDE T. RAMIREZ, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2009-0078

Supreme Court of the Virgin Islands

March 2, 2012

RENEE D. DOWLING, ESQ., Law Offices of Renee D. Dowling, Christiansted, USVI, *Attorney for Appellant.*

RICHARD S. DAVIS, ESQ., Assistant Attorney General, V. I. Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate, Justice*; and MOORE, *Designated Justice.*[1]

---

[1] Associate Justice Maria M. Cabret is recused from this matter. The Honorable Thomas K. Moore has been designated in her place pursuant to title 4, section 24(a) of the Virgin Islands Code.

 

## OPINION OF THE COURT

(March 2, 2012)

SWAN, *Associate Justice*. Appellant, Jude Ramirez ("Ramirez"), requests that this Court vacate his convictions for Aggravated Rape in the First Degree, an act of Domestic Violence, in violation of title 14, section 1700(a)(1) and title 16, section 91(b)(6) of the Virgin Islands Code, and two counts of Unlawful Sexual Contact in the First Degree, an act of Domestic Violence, in violation of title 14, section 1708(2) and title 16, section 91(b)(5) of the Virgin Islands Code. Ramirez alleges that the trial court abused its discretion when it denied his Motion to Suppress and his Motion for Judgment of Acquittal. Ramirez further alleges that there was insufficient evidence to sustain a conviction for Unlawful Sexual Contact. Also, Ramirez alleges that the admission of hearsay evidence during trial violated his constitutional rights. For the reasons elucidated below, we will affirm both Ramirez's convictions and the Superior Court's November 2, 2009 Amended Order of Judgment and Sentence.

## I. FACTS AND PROCEDURAL HISTORY

On or about November 27, 2007, J.R., a minor, divulged to her school teacher that her father, Ramirez, frequently raped and sexually abused her. The teacher reported J.R.'s statement to the school's guidance counselor. The next day, a parent-teacher conference was convened with J.R., J.R.'s mother, J.R.'s teacher and the school guidance counselor. At the conference, J.R. reiterated her statements about her sexual encounters with Ramirez. When the conference concluded, the guidance counselor told J.R.'s mother that Ramirez needed to come to the school the next day for another parent conference. The guidance counselor also informed J.R.'s mother that if Ramirez failed to attend the conference she would contact the police. The following day, Ramirez attended the parent conference which was held in the guidance counselor's office. In the presence of Ramirez, the teacher, the guidance counselor, her mother, and her sister, J.R. tearfully and reluctantly informed Ramirez that she was unhappy with his inappropriate touching of her. Ramirez wept and apologized for his inappropriate behavior, asserting that he was inebriated at the time and that he never intended to sexually abuse her. Thereafter, the guidance counselor contacted the police and reported Ramirez's alleged sexual assaults upon J.R.

A detective was dispatched to the school, and he spoke to the teacher and guidance counselor about Ramirez's alleged sexual abuse of J.R. On December 4, 2007, the detective interviewed J.R. and her sister in the conference room of the Department of Human Services (DHS). At this interview, J.R. provided painstaking details of Ramirez touching her breast and kissing her. J.R. informed the detective that Ramirez sexually abused her on her birthday in June of 2007 and that Ramirez had sexual intercourse with her approximately ten times over a two-year period. Subsequently, two detectives interviewed Ramirez. Prior to interviewing Ramirez, the detectives advised him of his *Miranda* rights. The detectives then asked Ramirez whether he had sexually abused J.R. Ramirez confessed that he had molested J.R. and further confessed to fondling J.R.'s breasts, but was unable to recall whether he had inappropriately touched J.R. in other areas of her body. On December 16, 2007, a doctor completed a report for DHS involving a complete physical examination of J.R. for possible evidence of physical and sexual abuse. After the doctor discovered that the ring around J.R.'s hymen was missing, he concluded that there existed evidence of sexual contact. Also, the doctor's examination confirmed that there had been some form of penetration into J.R.'s vagina.

On March 7, 2008, the People of the Virgin Islands ("People") filed a six-count Information which charged Ramirez with three counts of Aggravated Rape in the First-Degree/Domestic Violence in violation 14 V.I.C. § 1700(a)(1) and 16 V.I.C. § 91(b)(6) and three counts of Unlawful Sexual Contact, an Act of Domestic Violence, in violation of 14 V.I.C § 1708(2) and 16 V.I.C. § 91(b)(5). On April 23, 2009, before the trial commenced, Ramirez filed a Motion to Suppress the statements he made to the teacher and the guidance counselor on grounds that the statements were "privileged between the family and the guidance counselor." Ramirez also moved to suppress the statements of J.R. and of Ramirez's other minor daughter on grounds that the statements were obtained without parental consent.

On April 27, 2009, the People opposed Ramirez's Motion to Suppress and argued that all of the statements were obtained in accordance with either of the following provisions: 5 V.I.C. § 2533[2] (Persons mandated to

---

[2] 5 V.I C. § 2533 provides as follows:

report suspected abuse, sexual abuse and neglect); 5 V.I.C. § 2538 (Abrogation of privileged communications); and 27 V.I.C. § 169j (Privileged communication).[3] The People also argued in its opposition that the victim's statements to the teacher would be admissible as non-hearsay substantive evidence in the People's case in chief under the Uniform Rules of Evidence (URE) formerly codified in 5 V.I.C § 931(1).[4]

On May 8, 2009, the trial court held a hearing on Ramirez's Motion to Suppress. The People urged the trial court to deny the Motion to Suppress because of reasons enumerated in its opposition filing. Following the People's arguments, Ramirez asserted that the People mischaracterized his Motion to Suppress and argued that the suppression of the statements of the teacher and guidance counselor was necessary because Ramirez was coerced to give the statements without the benefit of *Miranda*

---

(a) When any physician, hospital personnel engaged in the admission, examination, care or treatment of persons, nurse, dentist or any other medical or mental health professional, school teacher or other school personnel, social service worker, day-care worker or other child-care or foster-care worker, or any peace officer or law enforcement official, has reasonable cause to suspect that a child has been subjected to abuse, sexual abuse or neglect, or observes the child being subjected to conditions or circumstances that would reasonably result in abuse or neglect, he shall immediately report it or cause a report to be made in accordance with the provisions of this subchapter.

(b) Whenever any person is required to report under this subchapter in his capacity as a member of the staff of a medical or other public or private institution, school, facility or agency, he shall immediately notify the person in charge of such institution, school facility or agency, or his designated agent, who shall then also become responsible to report or cause reports to be made. However, nothing in this subchapter is intended to require more than one report from any such institution, school or agency; but neither is it intended to prevent individuals from reporting on their own behalf.

(c) In addition to those persons and officials specifically required to report suspected child abuse, sexual abuse and neglect, any other person may make a report if such person has reasonable cause to suspect that a child has been abused or neglected or observes the child has been abused or neglected or observes the child being subjected to conditions or circumstances that would reasonably result in abuse or neglect.

[3] The People cite to 27 V.I.C. § 169j which is titled "Privileged Communication" generally. However, this section is specific to information communicated to a psychologist, psychological associate or associate psychologist.

[4] During the time of these proceedings, the 1953 version of the Uniform Rules of Evidence (URE), codified as 5 V.I.C. §§ 771-956 applied to evidentiary issues in the local Virgin Islands courts pursuant to this Court's decision in *Phillips v. People*, 51 V.I. 258 (V.I. 2009). *See Blyden v. People*, 53 V.I. 637, 658 (V.I. 2010) (internal citations omitted). However, on March 26, 2010, the Legislature of the Virgin Islands passed Act No. 7161, section 15 which repealed the URE and replaced it with the Federal Rules of Evidence. The Act was signed into law on April 7, 2010.

warnings. However, this argument in Ramirez's Motion to Suppress lacks clarity. In his Motion, Ramirez requested suppression of the teacher's and guidance counselor's statements because "those communications were privileged between the family and the guidance counselor." Moreover, Ramirez stated in the facts of his motion that "Jude T. Ramirez made statements and participated without restraint." Nevertheless, at the hearing, Ramirez moved to suppress his admission that he touched J.R.'s breasts on the grounds that his admission was involuntary and that his Fifth Amendment rights were violated.

After considering arguments from both parties, the trial court orally denied both the written and oral motions to suppress. These decisions were memorialized in a written order dated May 11, 2009. Also, during the hearing on the Motion to Suppress, the People notified the trial court, in the presence of defense counsel, of its intent to call witnesses who would testify that J.R.'s testimony was a recantation of her previous accusations against Ramirez. Ramirez's counsel orally objected to this proffered testimony. On May 11, 2009, Ramirez's counsel filed a written motion *in limine* requesting the trial court to exclude all testimony by J.R., by the teacher and by the guidance counselor that is based on hearsay. The trial court failed to rule on the motion *in limine* before trial.

At trial, J.R. testified on direct examination by the People that she told her teacher, the guidance counselor and the detective that Ramirez had sexual contact with her and that she also signed a document for the police stating that Ramirez had sex with her. Importantly, J.R. testified that the statements she made concerning her father sexually assaulting her were not true; that her father did not have sex or sexual contact with her, and that she lied to those three persons because she was jealous that her father was not spending enough time with her. Also, J.R. testified that at the parent conference her father never admitted to sexually assaulting her. Ramirez's counsel cross-examined J.R. regarding the statements that she made to the teacher, the guidance counselor, and the detective. Over Ramirez's counsel's objection, the trial court allowed the People to introduce the testimony of the detective, the teacher and the guidance counselor regarding what J.R. told them about sexual contact with her father.

At the close of the People's case, Ramirez's counsel orally moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, which resulted in the dismissal of one count of Aggravated

415

Rape in the First Degree. At the close of all the evidence, Ramirez's counsel filed a Renewed Motion for Judgment of Acquittal which resulted in the dismissal of another count of Aggravated Rape in the First Degree and one count of Unlawful Sexual Contact. At the conclusion of Ramirez's trial on May 13, 2009, the jury found Ramirez guilty of the remaining three counts in the Amended Information. On May 20, 2009, Ramirez filed another Motion for Judgment of Acquittal, contending that there was insufficient evidence to convict him of two counts of unlawful sexual contact and that the statute the trial court relied upon to allow the testimony of the detective, the teacher and the guidance counselor was unconstitutional. On June 26, 2009, the trial court denied Ramirez's Motion for Judgment of Acquittal. On August 6, 2009, Ramirez appealed his convictions to this Court.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final order is a judgment from a court which ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment. *In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) (citing *Bethel v. McAllister Bros., Inc.*, 81 F.3d 376, 381 (3d Cir. 1996)); *see also Rojas v. Two/Morrow Ideas Enters., Inc.*, 53 V.I. 684, 691 (V.I. 2010).

## III. ISSUES AND STANDARD OF REVIEW

Ramirez seeks reversal of his convictions and raises the following claims: (1) that the trial court abused its discretion in denying his Motion to Suppress; (2) that the admission of the hearsay testimony of the teacher, the guidance counselor, and the detective violated his constitutional rights; (3) that there was insufficient evidence to sustain a conviction on Count I of the First Amended Information; and (4) that the trial court abused its discretion in denying his Motion for Judgment of Acquittal.

The standard of review for this Court's examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error. *Blyden v. People*, 53 V.I. 637, 646-47 (V.I. 2010); *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 300 (3d Cir. 2008). Our review of a challenge to the sufficiency of the

evidence is likewise plenary, "and we view the evidence at trial in the light most favorable to the prosecution, the verdict winner." *United States v. Holmes*, 607 F.3d 332, 335 (3d Cir. 2010). We will sustain Ramirez's conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Elizee v. People*, 54 V.I. 466, 475 (V.I. 2010). We also exercise a *de novo* review of a trial court's denial of a Rule 29 motion for judgment of acquittal. *United States v. Carbo*, 572 F.3d 112, 113 (3d Cir. 2009); *see also Stevens v. People*, 52 V.I. 294, 304-05 (V.I. 2009).

## IV. DISCUSSION

### A. The trial court did not err when it denied Ramirez's Motion to Suppress his statements at the parent conference.

Ramirez asserts that the trial court abused its discretion when it denied his Motion to Suppress the statements he made at the November 30, 2007 parent-conference at which he admitted that he had sexual contact with his daughter, J.R. Ramirez argues that his Fifth Amendment[5] right against self-incrimination was violated because the guidance counselor issued an inappropriate threat "in order to compel his presence and cooperation" at the conference. (Appellant's Br. 9.) Consequently, Ramirez argues that since he was coerced to appear at the guidance counselor's office and no *Miranda* warnings, as required by the Fifth Amendment, were issued to him by the guidance counselor before she began to question him about J.R.'s allegations, the statement he made at the parent conference regarding sexual contact with J.R. constituted an involuntary confession and should not be admitted into evidence.

The Fifth Amendment, in relevant part, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. "It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136,

---

[5] The Fifth Amendment to the Constitution is applicable to the Virgin Islands through the Revised Organic Act of 1954, §3.

79 L. Ed. 2d 409 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973)) (internal citations omitted). The linchpin of custodial interrogation is embedded in *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), in which the United States Supreme Court held that:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.*

(emphasis added). Guided by these precepts, we reject Ramirez's argument and conclude that the statement he made at the parent conference regarding sexual contact with J.R. was not prohibited by his Fifth Amendment right against self-incrimination because there was no interrogation by law enforcement officers, nor was Ramirez held in custody or otherwise deprived in any way of his freedom of action or movement during the parent conference.

### 1. The persons conducting the parent conference were not law enforcement officers nor were they acting in a law enforcement capacity.

Generally, government personnel who are not primarily charged with enforcement of criminal statutes are not required to comply with *Miranda* prior to questioning a person. *United States v. Jenkins-Watts*, 574 F.3d 950, 968 (8th Cir. 2009). The Virgin Islands Code defines a "law enforcement officer" as "any officer of the Territory who is empowered by law to conduct investigations of or to make arrests for, offenses and any attorney authorized by law to prosecute or participate in the prosecution of such offenses." V.I. CODE ANN. tit. 5, § 4101(f).

Considering the language of title 5, section 4101 and case law precedent on this issue, we find no support for the contention that the teacher and the guidance counselor in this case were acting as law enforcement officers before or during the parent conference; therefore, they were not required to administer *Miranda* warnings to Ramirez before they questioned him concerning J.R.'s allegations. The appellate record

contains no evidence that the teacher or the guidance counselor was employed by the Virgin Islands Police Department, the Department of Justice, or was otherwise acting as an agent of the police or the prosecution during the parent conferences of November 27-30, 2007. *See S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008) (citing supporting cases) (concluding that the assistant principal was not required to advise the student of her *Miranda* rights because the assistant principal "was not acting at the behest of law enforcement, law enforcement officers were not present," and that the assistant principal's actions were reasonable under the circumstances).

There may be circumstances whereby a non-traditional law enforcement official may be obligated to provide *Miranda* warnings such as, where an individual is held in custody and where the substance of the official's questioning may lead to a criminal prosecution. *See Mathis v. United States*, 391 U.S. 1, 3-4, 88 S. Ct. 1503, 20 L. Ed. 2d 381, 1968-2 C.B. 903 (1968) (holding that IRS agents should have notified defendant of *Miranda* rights before questioning him because "routine tax investigations frequently lead to criminal prosecutions"). However, we find that under the circumstances of this case, Ramirez was not held in custody.

### 2. Ramirez was not in custody during the parent conference.

██ For the obligation to provide *Miranda* warnings to apply, a suspect must be in custody. Therefore, even if investigations by school officials of allegations of child abuse are likely to result in criminal prosecution and the guidance counselor in this case was required to notify Ramirez of his *Miranda* rights, additional evidence was needed that Ramirez was held in custody as required by *Miranda. United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987). A suspect is deemed to be "in custody" for *Miranda* purposes when the suspect has been deprived of freedom of action in any significant way. *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007). No evidence exists that Ramirez's freedom of movement at the parent conference was obstructed, impeded or prevented by the teacher, by the guidance counselor or by anyone present.

██ An inquiry regarding whether a person was held in custody often hinges on the totality of the circumstances. *Yarborough v. Alvarado*, 541 U.S. 652, 662-63, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (holding that custody for *Miranda* purposes is determined by examining the

totality of the circumstances surrounding interrogation and determining whether a reasonable person would have felt free to terminate the interrogation and leave). The United States Court of Appeals for the Third Circuit ("Third Circuit") has enunciated five factors which we will also apply to this case to assess whether Ramirez was held in custody. *United States v. King*, 604 F.3d 125, 138 (3d Cir. 2010). These factors include: (1) whether an officer advised the defendant that he was under arrest or that the defendant was free to leave; (2) the location or physical surroundings of the interrogation; (3) the duration of the interrogation; (4) whether the officer used coercive tactics, including hostile tones in the officer's voice, display of a weapon, or conduct where the officer physically restrains the defendant's movement; and (5) whether the defendant voluntarily submitted to questioning from the officer. *Id.*

The first factor urges an examination of whether Ramirez was under arrest or whether he was free to leave the parent conference. The facts disclose that Ramirez went to the school upon his own volition. Regardless of whether Ramirez thought that there could be serious repercussions from the guidance counselor contacting the police if he failed to attend the parent conference, Ramirez was free to exercise his option of not attending the conference. Furthermore, there is no evidence in the record that either the teacher or the guidance counselor placed him under arrest or that Ramirez was not free to leave the parent conference at the guidance counselor's office or was not free to leave the school premises. Ramirez is reminded that the parent conference did not occur in the presence of law enforcement officers.

As to the second factor, the location or physical surroundings of the interrogation, the parent conference occurred at J.R.'s school in the guidance counselor's office. A guidance counselor's office is not by any measure a hostile environment when compared to a police station, where criminal conduct could be the primary focus including arrest and criminal investigation and where formal custodial interrogations occur. No evidence exists in the record before us from which we can conclude or infer that intimidation tactics were employed by either the teacher or the guidance counselor in order to obtain a confession from Ramirez.

The fourth factor evaluates whether an interrogating officer employed coercive tactics, including hostile tones in the officer's voice, display of a weapon, or conduct by the officer in which the officer physically restrains the defendant's movement. Ramirez posits that coercive tactics

were used at the parent conference because the guidance counselor threatened to contact the police if Ramirez failed to attend the conference by 9:30 a.m., thereby compelling his presence and cooperation. Therefore, he could not exercise his free will. (Appellant's Br. 10.) We find Ramirez's contention to be specious and meritless. While the guidance counselor may have used a persuasive strategy to secure Ramirez's attendance at the parental conference, there was no coercive tactic, display of weapon, harsh tone, or other interrogative methods such as those typically used by law enforcement officials present at the parent conference. The record before us is devoid of any action by the guidance counselor which is remotely tantamount to the use of physical force upon Ramirez in order to secure a confession from him. Importantly, the guidance counselor exercised no authority over Ramirez to force him to act in any specified manner. Ramirez had the option of attending or not attending the conference. Had Ramirez chosen not to attend, and had he been subsequently apprehended by law enforcement officials, *Miranda* warnings would have been required.

In evaluating the fifth factor of whether the defendant voluntarily submitted to questioning, we find evidence in the record that Ramirez voluntarily answered the questions of the guidance counselor. The guidance counselor testified regarding Ramirez's confession as follows:

[PROSECUTOR]: So, when the defendant came in to the meeting, did you question him at all prior to [J.R.] making her allegations?

[GUIDANCE COUNSELOR]: No, I didn't.

[PROSECUTOR]: After she made her allegations, what happened?

[GUIDANCE COUNSELOR]: After she made her allegations, I turned around and asked the individual, was that true. And the individual indicated he —

[PROSECUTOR]: I'm sorry.

[THE COURT]: He indicated what?

[GUIDANCE COUNSELOR]: He indicated that he did it, that he was sorry, and that he was drunk at the time.

(J.A. at 53-54.) In subsequent testimony, the guidance counselor confirmed that she did not threaten Ramirez and that she only asked him one question. Ramirez's confession was prompted by remorse and not as a result of threats, verbal or otherwise, nor as a result of coercion. Undeniably, no evi-

dence exists on the record before us that Ramirez's confession or statements at the parent conference were involuntary.

■ Unquestionably, Ramirez was not in custody while at the parent conference on November 30, 2007. The guidance counselor said nothing to Ramirez or took any action directed at Ramirez which would have inculcated in Ramirez's mind that he could not voluntarily leave the guidance counselor's office, if he so chose. Accordingly, as a school official, it is incontestable that the guidance counselor had no obligation to *Mirandize* Ramirez under the circumstances existing at the parent conference.[6]

## B. The trial court did not err when it allowed other witnesses to testify regarding J.R.'s prior statements.

Ramirez contends that, despite his objections, the trial court allowed the People to introduce the statements J.R. made to the teacher, the guidance counselor, and the police officer "to prove the truth of the matter asserted and to establish the elements of the crime against him." (Appellant's Br. 10.) Likewise, Ramirez argues that the trial court should not have allowed the teacher, the guidance counselor and the police officer to testify about what J.R. said to them regarding his sexual acts. He asserts that admission of this proof violates the principles of the

_____

[6] We recognize that the former URE contained a provision governing confessions, which arguably could provide greater protections to criminal defendants than the United States Constitution:

> In a criminal proceeding as against the accused, a previous statement by him relative to the offense charged if, and only if, the judge finds that the accused when making the statement was conscious and was capable of understanding what he said and did, and that he was not induced to make the statement (a) under compulsion or by infliction or threats of infliction of suffering upon him or another, or by prolonged interrogation under such circumstances as to render the statement involuntary, or (b) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same[.]

5 V.I.C. § 932(6). However, Ramirez never invoked section 932(6) before the trial court or in his appellate brief, and we decline to analyze the statute *sua sponte* because — given the absence of any Virgin Islands case law interpreting this statute — the second prong of the plain error test cannot be satisfied. *See Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010) (explaining that an error is "plain" only if the error is clear under current law, and thus "there can be no plain error where there is no precedent . . . directly resolving it.") (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)).

Confrontation Clause of the Sixth Amendment.[7] He contends that the statute relied upon below in permitting this testimony, title 5, section 932(1),[8] which codified a hearsay exception for "[a] statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter . . ." is unconstitutional because "[t]he Sixth Amendment to the Constitution of the United States guarantees an accused the right to confront the witnesses against him."

■ While neither the parties nor the trial court recognized that there is another statute more directly addressing the admissibility of prior *inconsistent* statements in the Virgin Islands,[9] there was, in any event, no constitutional violation in this case. It is not necessary to consider whether

---

[7] The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

[8] 5 V.I.C. §932(1):

Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except:

**(1) *Previous statements of persons present and subject to cross-examination*.** A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness;

[9] That provision is codified in title 14, section 19 of the Virgin Islands Code and is titled "Special Evidentiary Rules." It provides:

Evidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. After the witness has been given an opportunity at such hearing or trial to explain or deny the prior statement, the court shall allow either party to prove that the witness has made a prior statement, oral or written, inconsistent with his sworn testimony. Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial. Each party shall be allowed to cross-examine the witness on the subject matter of his current testimony and the prior statement.

14 V.I.C. § 19.

Title 5, section 932(1) refers to prior statements in general with no distinction as to whether the statements are consistent or inconsistent, whereas title 14, section 19 refers specifically to prior inconsistent statements. It is a basic principle of statutory construction that a specific statute, 14 V.I.C §19, controls over a general provision such as 9 V.I.C § 932(1), particularly when the two are interrelated and closely positioned. *HCSC-Laundry v. United States*, 450 U.S. 1, 6, 101 S. Ct. 836, 67 L. Ed. 2d 1 (1981).

either of these Virgin Islands statutes embodies a "firmly rooted" hearsay exception, or is undergirded by a showing of reliability for the proof it allows to be admitted, because those formerly applicable standards under *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), have been overturned by the Supreme Court of the United States.[10] Under *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Sixth Amendment is satisfied where — as here — the declarant of the out-of-court statements used against the defendant is present and testifying at the trial, subject to questioning by the accused:

> [W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green*, 399 U.S. 149, 162, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970). . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Id.* at 59 n.9.

 Thus, for Sixth Amendment Confrontation purposes, as long as the declarant of the out-of-court statements testifies at the hearing — as is required for application of both of the Virgin Islands statutes, and as J.R. did in this case — other witnesses may testify to what the prior statements were. *Id. See generally Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (no Sixth Amendment violation in having officers testify to statements by a victim incriminating the defendant, where the victim who allegedly made the out-of-court statements also testifies at the trial and is subject to questioning by the accused); *see also, State v. Stokes*, 381 S.C. 390, 673 S.E.2d 434, 439 (S.C. 2009) (the Confrontation Clause was not violated where witness's prior written statement to police was admitted into evidence, even though defense had not asked questions of the witness concerning the statement during cross-examination, because the Confrontation Clause only guarantees an opportunity for cross-examination, which was provided both before and

---

[10] In *Crawford*, the United States Supreme Court found the former "reliability" focus of *Roberts* an "unpardonable vice," 541 U.S. at 64, and it clarified that *Roberts* has been formally overturned in *Davis v. Washington*, 547 U.S. 813, 825 n.4, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) ("We overruled *Roberts* in *Crawford*").

after the statement was admitted) (quoting *Crawford*, 541 U.S. at 59 n.9). Accordingly, the trial court did not err by allowing the testimony of the teacher, the guidance counselor and the detective regarding J.R.'s out-of-court statements.

### C. There was sufficient evidence to sustain a conviction on Count I

Ramirez argues that the evidence at trial was insufficient to sustain a conviction on Count One — Unlawful Sexual Contact in the First Degree, an act of Domestic Violence. (Appellant's Br. 13.) Count One charges as follows:

> Sometime during the month of June[ ] 2005, in the vicinity of #19-P Estate Whim, Frederiksted, St. Croix, JUDE RAMIREZ did perpetrate an act of unlawful sexual [contact] upon the person, J.R., who was under thirteen years of age, with J.R., a twelve year old minor female by touching her intimate body parts, to wit: Her vagina. Jude Ramirez and J.R. are blood relatives, an act of domestic violence, in violation of 14 V.I.C. § 1708(2) and 16 V.I.C. § 91(b)(5) (**UNLAWFUL SEXUAL CONTACT IN THE FIRST DEGREE/DOMESTIC VIOLENCE**).

In support of his argument, Ramirez averred that "[t]he birth certificate of the minor J.R. was introduced in evidence[,] and according to this document[,] J.R. was eleven years old in June of 2005." (Appellant's Br. 13.) Ramirez further asserts that "it is factually impossible for him to have had unlawful sexual contact with a twelve year [old] J.R. in June of 2005," as alleged in the information, if the victim was only eleven years old at the time. For these reasons, Ramirez alleges that the verdict was not supported by the facts presented. (*Id.* at 13 - 14.)

 We find Ramirez's argument to be spurious. Ramirez presupposes that the facts conveyed in the Information constitute evidence. However, "Supreme Court precedent has consistently held that excess allegations in an [information] that do not change the basic nature of the offense charged, need not be proven, and should be treated as mere surplusage." *United States v. Pumphrey*, 831 F.2d 307, 265 U.S. App. D.C. 306 (D.C. Cir. 1987) (citing *United States v. Miller*, 471 U.S. 130, 105 S. Ct. 1811, 85 L. Ed. 2d 99 (1985) and *Ford v. United States*, 273 U.S. 593, 600, 47 S. Ct. 531, 71 L. Ed. 793 (1927)). More specifically, courts have held that

when the age of the victim at the time of an act constitutes an element of the crime, it is not necessary for the information or indictment to provide the victim's exact age or a precise date of the incident, so long as the evidence introduced at trial satisfies the element of the charged offense. *See, e.g., Washington v. Commonwealth*, No. 2003-SC-0703-MR, 2005 Ky. Unpub. LEXIS 91, at *24 (Ky. 2005) (unpublished) (holding that failure to establish date of child rape was of no consequence because evidence established that the minor was less than twelve years old at all pertinent times); *Walker v. State*, 4 S.W.3d 98, 104-05 (Tex. App. 1999) (holding that trial judge's failure to change "on or about" date in indictment, which encompassed period when victim had been sexually abused while under the age of fourteen, was of no consequence).

 ██ The Information charged Ramirez with violating title 14, section 1708(2) of the Virgin Islands Code, which makes it unlawful for a person to "engage[] in sexual contact with a person not the perpetrator's spouse . . . when the other person is under thirteen years of age." This statute's only age requirement is that the victim be under thirteen years of age. Therefore, whether J.R. was eleven, as confirmed by her birth certificate, or twelve, as listed in the information, is irrelevant because in both instances she was under thirteen years of age, thereby proving the age element of the crime in Count One. Moreover, although the Information erroneously identified J.R. as being twelve-years old in June 2005, it accurately tracks the language of 14 V.I.C. 1708(2) by stating that J.R. "was under thirteen years of age." (J.A. at 17.) The People introduced evidence proving that J.R. was under thirteen. Furthermore, whether a defendant is guilty of a crime is determined by the statutory language and statutory elements of the crime being proven by the People beyond a reasonable doubt and not by the inartful and negligent drafting of the information.

The trial court specifically instructed the jury that the Information "serves no purpose beyond advising the defendant what he is charged with. Nothing contained in the Information is evidence nor may it be regarded as such." (Trial Tr., Vol. III, 318, May 13, 2009.) The trial court further informed the jury that "[t]he defendant is on trial only for acts alleged in the Information; namely, . . . Unlawful Sexual Contact First Degree in Counts One and Three[,] all charges being acts of domestic violence." The Superior Court's final instructions to the jury included the following:

426

> In order for the Government to sustain its burden of proof for the crime of Unlawful Sexual Contact in the First Degree as charged in Count One of the Information, *the following elements must be proved beyond a reasonable doubt.* That the defendant and no other person but the defendant knowingly engaged in sexual contact with J.R. That at the time of the sexual contact[,] J.R. *was under the age of 13.* That at the time of the sexual contact[,] J.R. was not the defendant's spouse and that the defendant engaged in the sexual contact to arose [sic] or gratify to his sexual desires and these acts occurred on or about June[ ] 2005 in the judicial district of St. Croix, Virgin Islands.
>
> If you find that the Government *has proven all of these elements beyond a reasonable doubt, you must find the defendant guilty.*

(*Id.* at 322.) (emphasis supplied). Ramirez's conclusion that "[t]he verdict is not supported by the facts presented," (*Id.* at 13-14), is incongruous with his concession that "[t]he birth certificate of the minor[,] J.R.[,] was introduced in evidence and according to this document J.R. was eleven years old in June of 2005." Therefore, in finding that the evidence was sufficient to establish a conviction for unlawful sexual contact in the first degree, we affirm Ramirez's conviction on Count One.

### D. Whether the trial court abused its discretion in denying Appellant's Motion for Judgment of Acquittal.

Ramirez argues that his Motion for Judgment of Acquittal should have been granted because impermissible hearsay evidence was admitted to prove the elements of the crime. Therefore, he asserts that the People failed to prove each elements of the crime charged beyond a reasonable doubt. However, we have already concluded that the statements were permissible under title 14, section 19 of the Virgin Islands Code, and that there was sufficient evidence to convict Ramirez on Count One. Accordingly, we conclude that the trial court did not err when it denied Ramirez's Motion for Judgment of Acquittal.

### V. CONCLUSION

We find no cogent or plausible reason to reverse the Superior Court's November 2, 2009 Amended Order of Judgment and Sentence. Evidence on the record confirms that during the parent conference, school personnel were not operating as law enforcement officers or under the direction of

law enforcement officers, and that Ramirez was not in custody while he attended the parent conference. Moreover, subsequent to the parent conference, Ramirez voluntarily confessed to law enforcement officials that he had unlawful sexual contact with J.R. (J.A. at 195-199.) Therefore, Ramirez's *Miranda* rights, and privilege against self-incrimination under the Fifth Amendment, were never compromised by the parent conference.

We also reject Ramirez's assertion that the trial court violated his Sixth Amendment right to confront the witnesses against him when it permitted the use of substantive, inadmissible hearsay statements. Significantly, J.R., the declarant, testified at the trial and was available to be cross-examined. Furthermore, Ramirez's challenge to the sufficiency of the evidence on the basis that the First Amended Information incorrectly stated J.R.'s age is non-meritorious. Therefore, the trial court did not abuse its discretion when it denied Appellant's Motion for Judgment of Acquittal. For these reasons, we affirm Ramirez's convictions and the trial court's November 2, 2009 Amended Order of Judgment and Sentence.